RECEIVED

NOV 2 9 2012

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DIS-TRAN WOOD PRODUCTS, LLC | CIVIL ACTION NO. 12-1876 |
| VERSUS | JUDGE TRIMBLE |
| BROOKS MANUFACTURING CO. | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is the "Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, Alternatively, to Transfer or Decline Jurisdiction"[1] filed by defendant Brooks Manufacturing Company ("Brooks"). For the reasons expressed herein below, the court finds that Brooks' motion should be granted insofar as it seeks transfer of this matter to the U.S. District Court for the Western District of Washington and denied in all other respects.

## I.    FACTUAL AND PROCEDURAL HISTORY

"A crossarm is a rigid member that is secured to a vertical pole for the purpose of supporting one or more power lines above the ground."[2]  Both plaintiff, Dis-Tran Wood Products, LLC ("Dist-Tran"), and Brooks manufacture wooden crossarms and both offer crossarms with nail endplates that are said to reduce splitting of the crossarm ends.  Brooks holds U.S. Patent Number 7,007, 438 B1 ("the '438 Patent") on a "method of supporting power lines from a vertical pole" in order to "substantially prevent splitting of the crossarm member caused by loads…"[3]  Dis-Tran brings this suit alleging the invalidity of the '438 Patent.[4]  Specifically,

---

[1] R. 17.
[2] R. 33-1
[3] R. 33-1 (Exhibit "A" to Dis-Tran's Amended Complaint) at 8:42 – 9:26.

Dis-Tran seeks declaratory judgment declaring that Brooks' patent is "invalid, unenforceable, and/or not infringed[.]"[5]

Brooks responded to Dis-Tran's suit by filing the instant motion alleging a lack of general personal jurisdiction, improper venue and grounds for transfer or a decline of jurisdiction.[6] Brooks alleges that it is a Washington entity with its principal place of business in Washington and that Dis-Tran cannot demonstrate sufficient contacts with the forum state of Louisiana in order to establish general personal jurisdiction in this case. Brooks further alleges that this suit is actually the continuation of a dispute as to which suit was originally filed in Washington and, for that reason, this suit should be transferred to the United States District Court for the Western District of Washington. Finally, Brooks alleges that the court may decline to exercise declaratory judgment jurisdiction over this suit based on evidence of forum shopping by Dis-Tran.

The motion has been fully briefed and is now ripe for decision.

## II.   ANALYSIS

As argued by both parties, we apply Federal Circuit law, rather than Fifth Circuit law, when resolving jurisdictional issues concerning interstate patent disputes because "the jurisdictional issue is 'intimately involved with the substance of the patent laws.'"[7]

Whether a district court has personal jurisdiction over an out-of-state defendant requires two inquiries: (1) whether the forum state's long-arm statute permits service of process and (2) whether or not an assertion of personal jurisdiction violates due process.[8] Louisiana's long-arm

---

[4] R. 1.
[5] Id. at p. 1.
[6] R. 17.
[7] Avocent Huntsville Corp. v. Aten Int'l. Co., 552 F.3d 1324, 1328 (Fed. Cir. 2008) quoting Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995).
[8]

statute permits service to the full extent of due process, so what begins as a two-part analysis collapses into a single inquiry:  does constitutional due process permit the assertion of personal jurisdiction over Brooks by a Louisiana district court?[9]

Personal jurisdiction may be general or specific.  Constitutional due process permits a a district court to exercise jurisdiction over a defendant who undertakes "continuous and systematic general business contacts" with the forum state, whether or not the claims against that defendant arise out of the defendant's contacts with the forum state.[10]  When a defendant's contacts are less extensive, the court may exercise specific jurisdiction where that defendant has "purposefully directed its activities at the forum state and the litigation results from the alleged injuries that arise out of…those activities."[11]  The plaintiff bears the burden of demonstrating a prima facie case of jurisdiction over a non-resident defendant.[12]

Brooks asserts that this court lacks general personal jurisdiction over it.  Brooks is a Washington entity with its principal place of business in Bellingham, Washington and maintains no offices, facilities, vendors, agents, distributors or contracts in Louisiana.[13]  Brooks does not deny that it has supplied products to buyers who have, in turn, used the products for jobs in Louisiana, but points out that, from 2010 to present, Brooks made only eleven (11) sales which were shipped to Louisiana.[14]  Brooks also points out that all but one of these eleven sales were billed to customers outside of Louisiana and were shipped by common carrier to Louisiana at the request of those customers.[15]

---

[9] La. R. S. 13:3201; Dickson Marine, Inc. v. Panalpina, Inc., 179 F.3d 331, 336 (5th Cir. 1999); Petroleum Helicopters, Inc. v. Avco Corp., 834 F.2d 510, 514 (5th Cir. 1987).
[10] Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415 (1984).
[11] Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co., 517 F.3d 235, 243 (5th Cir. 2008).
[12] Id.
[13] Declaration of Shannon Terrell [R. 18-1] at ¶¶ 3-5.
[14] Id. at ¶¶ 7-15.
[15] Id. at ¶¶ 10-13.

3

Brooks cites <u>Campbell Pet Company v. Miale</u>[16] and <u>Autogenomics, Inc. v. Oxford Gene Tech, Ltd.</u>[17] as supporting authority for its argument against personal jurisdiction in this case.  In <u>Campbell</u>, the Court of Appeals for the Federal Circuit affirmed the Western District of Washington court's denial of personal jurisdiction where the non-resident defendant transacted less than 2% of its total sales with Washington customers over a period of eight (8) years and the defendant's representative attended a convention in Washington and attempted to have plaintiff's product removed from the convention because of plaintiff's alleged patent infringement.  The court found that these contacts fell far short of the level of continuous and systematic contacts required to amount to a "presence" in Washington as would confer general jurisdiction on the district court.  Moreover, the appellate court cited its own earlier rulings wherein it found the issuance of a cease and desist letter and the use of a website not directed at Washington customers were insufficient to meet the high burden of proof necessary to establish personal jurisdiction.

In <u>Autogenomics</u>, the court affirmed a Central District of California ruling dismissing plaintiff's claims for lack of personal jurisdiction over defendant Oxford.  The appellate court rejected Autogenomics' argument that Oxford's presence at several trade conferences allowed Oxford to carry on business in California just as if it maintained offices in the state.  The court also agreed with the district court's finding that a joint venture agreement with a third party maintaining offices in California was insufficient to support a finding of personal jurisdiction. The court instructed that, while the plaintiff is entitled to have all factual conflicts resolved in its favor, the plaintiff is only entitled to those inferences which are reasonable.[18]

---

[16] 542 F.3d 879 (Fed. Cir. 2008).
[17] 566 F.3d 1012 (Fed. Cir. 2009).
[18] <u>Autogenomics</u>, 566 F.3d at 1018 <u>citing</u> <u>Pennington Seed, Inc. v. Produce Exch. No. 299</u>, 457 F.3d 1334, 1338 (Fed. Cir. 2006).

Dis-Tran alleges that Brooks mischaracterizes the nature of its contacts with Louisiana in an effort to minimize what is truly a longstanding presence in the state.  Dis-Tran alleges that Brooks markets its products in Louisiana through Louisiana distributors Techline, Inc. ("Techline"), Irby and Wesco.  Dis-Tran further alleges that Brooks' representatives regularly attend trade conventions in New Orleans and that Brooks competes for contracts offered for bid by utility companies servicing Louisiana, such as SLEMCO, Entergy, SWEPCO and AEP through its suppliers.  Finally, Dis-Tran points out that Brooks maintains a website accessible in Louisiana and advertises in publications directed toward Louisiana.

Dis-Tran cites Crystal Semiconductor Corp. v. Opti, Inc.,[19] a 1997 opinion from the Western District of Texas, wherein the court asserted general personal jurisdiction over the non-resident defendant based on sales by Opti, Inc. to customers in the Western District.  The court found that, through use of a Houston office and its in-district sales representative, Opti maintained "continuous and systematic" contacts with the district.  Citing the Fifth Circuit's ruling in Holt Oil & Gas Corp. v. Harvey,[20] the court deemed evidence of fifty-two (52) trips to the district by Opti employees as exceeding the limits of what may be characterized as "…random…fortuitous…or… attenuated[.]"[21]

Dis-Tran also cites For Life Products, Inc. v. Perfect Products, Inc.,[22] a 2011 decision by the U.S. District Court for the Southern District of Florida, as authority for its argument that Brooks' contacts with this forum should be found sufficient for the exercise of general personal jurisdiction in this case.  In For Life Products, the court found that the non-resident defendant, incorporated in Oklahoma with its principal place of business in Oklahoma, maintained contacts

---

[19] 1997 WL 798357 (W.D. Tex. 1997).
[20] 801 F.2d 773 (5th Cir. 1986).
[21] Opti, 1997 WL 798357, *7.
[22] 2011 WL 2181889 (S.D. Fla. 2011).

with the forum sufficient to enable the exercise of personal jurisdiction over it by: (1) attending two trade shows within a few months and giving away thousands of product samples; (2) maintaining a website from which customers could buy the product; (3) maintaining an independent distributer on Jacksonville; and (4) promoting its product on a television program which was aired in Florida, even though defendant had no part in the decision to air the program in Florida.[23]   The court found that it possessed general personal jurisdiction over the non-resident defendant, but noted that the facts of that case presented a "close call[.]"[24]

When compared with the facts of the cases cited by the parties, the nature of the contacts alleged by Dis-Tran falls short of what would constitute general personal jurisdiction over Brooks in this case.  Brooks shows that, while its products may be available to end customers in this district such as SLEMCO, RUS, Entergy and AEP via suppliers like Techline, Irby and Wesco, Brooks did not negotiate any of these transactions in Louisiana or with a Louisiana representative of these suppliers.[25]  To the extent that sales of crossarms by Brooks to Techline, Irby and Wesco may constitute the injection of Brooks' product into this forum's "stream of commerce," these transactions are insufficient, without more, to support general jurisdiction.[26]

Similarly, limited attendance of trade shows in New Orleans is insufficient to establish general jurisdiction since, as argued by Brooks, New Orleans is a popular destination for many large national trade shows.[27]  We also find that the fact that Brooks maintains a passive website

---

[23] Id. at * 5.

[24] Id. at *5.

[25] R. 32 at p. 3-4.

[26] AFTG-TG, LLC v. Nuvoton Technology Corp., 689 F.3d 1358 (Fed. Cir. 2012) (noting that the U.S. Supreme Court's recent ruling in McIntyre Machinery, Ltd. v. Nicastro, 131 S.Ct. 2780 (2011), did not effectively establish a bright-line application of the "stream of commerce" theory following prior cases in which the Court rejected the idea that placement of a product into the stream of commerce was insufficient on its own to confer general jurisdiction); Jackson v. Tanfoglio Giuseppe, S.R.L., 615 F.3d 579, 584 (5th Cir. 2010) (internal citations omitted).

[27] Grober v. Mako Proudcts, Inc., 686 F.3d 1335, 1346 (Fed. Cir. 2012) (internal citations omitted).

which does not allow customers to purchase its products over the Internet does not constitute a basis for general jurisdiction.[28]

Based on these findings, the court concludes that it does not possess general personal jurisdiction over non-resident defendant Brooks.  We turn now to Dis-Tran's allegation of specific personal jurisdiction, found in its amended complaint.[29]

Dis-Tran alleges that, even if the court finds that it lacks general jurisdiction over Brooks, the nature of Brooks' contacts with this forum are sufficient to confer specific jurisdiction in this case.  Dis-Tran asserts that Brooks' negotiations with Dis-Tran over a potential license agreement on its patented crossarm, a cease and desist telephone call to Dis-Tran by Brooks' president, Dwayne Carter ("Carter") and an email to Irby with an attached press release in defense of its patent are, when taken together, ample justification for the exercise of specific jurisdiction over Brooks.[30]

Rather than requiring "continuous and systematic contacts" with the forum as with general jurisdiction, specific jurisdiction over a non-resident defendant patentee may be premised upon the patentee's purposeful direction of patent enforcement or defense activities in the forum.[31]  Federal Circuit jurisprudence makes clear that while a patentee's efforts to enforce or defend its own patent within the forum may create specific jurisdiction, a patentee's efforts at commercialization of its product are not properly considered for that purpose.[32]  Thus, Brooks' participation in licensing negotiations, which we note were fruitless, is not a factor which would weigh in favor of specific jurisdiction.  The next two allegations by Dis-Tran concern patent

---

[28] <u>Trintec Industries, Inc. v. Pedre Promotional Products, Inc.</u>, 395 F.3d 1275, 1281 (Fed. Cir. 2005) (internal citations omitted).
[29] R. 33-1 at ¶ 3.
[30] R. 29-2 at pp. 15-16.
[31] <u>Autogenomics, Inc. v. Oxford Gene Technology, Ltd.</u>, 566 F.3d 1012 (Fed. Cir. 2009).
[32] <u>Id.</u> at 1020; <u>Avocent Huntsville Corp. v. Aten Int'l Co.</u>, 552 F.3d 1324 (Fed. Cir. 2008).

enforcement and defense and, thus, are properly considered as potential bases for specific jurisdiction.

Brooks admits that Carter placed a single cease and desist telephone call to Dis-Tran's vice-president, John Doggett, on or about December 3, 2010.[33]  Brooks also admits that Shannon Terrell, Vice-President of Sales and Marketing, contacted Brooks' customer, Irby, via an employee in Jackson, Mississippi and sent a press release regarding the outcome of the prior suit filed by Brooks in the Western District of Washington.[34]

In Radio Systems Corp v. Accession, Inc.,[35] the Federal Circuit reaffirmed its prior ruling in Avocent, which held that enforcement and defense efforts outside of the forum do not give rise to personal jurisdiction.  The court has reviewed the evidence submitted and finds that Terrell's email to Don Corley, an Irby employee located in Jackson, Mississippi, does not constitute in-forum patent enforcement.  The email at issue does not reference the forum and does not, as alleged by Dis-Tran, request distribution of the attached press release within the forum.  Based on these facts, the court finds no evidence of in-forum patent enforcement efforts by Brooks, except a single cease and desist telephone call in 2010.  This telephone call is insufficient as a matter of law as a basis for specific personal jurisdiction over Brooks.

Given these findings, the court will grant Brooks' motion to dismiss for lack of personal jurisdiction.  We proceed with our consideration of the other requests for relief within Brooks' motion out of an abundance of caution.

Brooks' motion next argues that, if the court finds that it does possess either general or specific jurisdiction, it should transfer this case to the U.S. District Court for the Western District of Washington pursuant to 28 U.S.C. § 1404, which provides, in part, that

---

[33] R. 32 at p. 7, n. 5.
[34] Id.; R. 32-1.
[35] 638 F.3d 785 (Fed. Cir. 2011).

> [f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.[36]

As cited by the parties, the preliminary inquiry under Section 1404 is whether or not the civil action "might have been brought" in the venue advocated by the movant.  In this case, we agree with Brooks that this civil action might have been brought in the Western District of Washington.  Brooks filed suit against Dis-Tran in the Western District of Washington in 2011, alleging patent infringement and seeking declaratory judgment as to the validity of the '438 Patent.[37]  Brooks points out that Dis-Tran never contested jurisdiction or venue in that action.  Dis-Tran does not address whether or not this suit might have been properly brought in the Western District of Washington and does not allege that it raised the issues of jurisdiction or venue in the prior suit.[38]

Both parties maintain offices in the proposed transferee district and the patent at issue is held by Brooks, which is incorporated in the State of Washington.  Based on these facts, the court finds that the instant suit might have been properly brought in the U.S. District Court for the Western District of Washington and, therefore, Brooks has fulfilled its preliminary burden of proof in support of transfer of venue.

Brooks must now satisfy the private and public interest factors adopted by the Fifth Circuit in Humble Oil & Refining Company v. Bell Marine Services, Inc.[39]  The first private interest factor is the relative ease of access to sources of proof.[40]  Brooks asserts that access to proof is easier in the Western District of Washington because Brooks' principal place of

---

[36] 28 U.S.C. § 1404(a).
[37] R. 18 at p. 2; R. 17-2.
[38] R. 29-2 at pp. 17-18.
[39] 321 F.2d 53 (5th Cir. 1963).
[40] In Re Volkswagen of America, Inc., 545 F.3d 304, 315 (5th Cir. 2008) (internal citations omitted).

business, business records and other documents relating to the '438 Patent are stored in that district.  Brooks also asserts that the majority of witnesses who may be called in to testify in this case reside in the Western District of Washington.  Brooks alleges that Dis-Tran's access to proof will also be easier in the Western District of Washington because of its office in Vancouver, Washington and the documents and evidence which may be stored there.[41]

Dis-Tran states that its relevant witnesses and evidence are located in this district and points out that, as part of the now-dismissed prior suit in the Western District of Washington, Brooks subpoenaed documents from Dis-Tran customers located in Texas, New Mexico and Pennsylvania.[42]  Dis-Tran asserts that these customers are all closer in proximity to this district than they are to the Western District of Washington.

The court finds the facts and evidence as to this issue as neutral, given that the proposed venue clearly eases Brooks' access to proof and the current venue clearly eases Dis-Tran's access to proof.  Although Brooks issued subpoenas as to evidence located in Texas, New Mexico and Pennsylvania, we also find that, if venue were transferred to the Western District of Washington, Dis-Tran would undoubtedly derive some convenience benefit from the presence of its offices within that district.  Thus, we find the first private interest factor is neutral in this case.

The second private interest factor is the availability of compulsory process to secure the attendance of witnesses. [43]  Brooks states that there are many non-party witnesses who reside beyond the reach of the court's subpoena power under Fed. R. Civ. P. 45(c), such as

> former employees of Brooks (including the named investors identified in the '438 Patent), former Dis-Tran employees based at Dis-Tran's Vancouver, Washington facility, and the patent attorney who prepared the application of the '438 Patent.[44]

---

[41] R. 18 at pp. 14-15.
[42] R. 29-2 at pp. 18-19.
[43] In Re Volkswagen, 545 F.3d at 315 (internal citations omitted).
[44] R. 18 at p. 15.

The third private interest factor is the cost of attendance for willing non-party witnesses. Brooks avers that a majority of witnesses who are not subject to this court's 100-mile subpoena power reside in the Washington and would face "significant" expenses in airfare, lodging rental car and food costs if this case were litigated in Louisiana.[48]  Similarly, Dis-Tran asserts that its key witnesses and evidence are beyond a Washington district court's compulsory process.[49]

Neither party specifies the number of witnesses at issue, the exact locations of these witnesses or the anticipated travel each witness would be expected to endure as to either venue. Given that both the current and proposed venues create inconvenience and increased cost for each party's witnesses, we also find that the third private interest factor is neutral.

The fourth private interest factor considers all other practical problems that make the trial of a case "easy, expeditious and inexpensive."[50]  Brooks cites the Washington district court's familiarity with the parties and the issues presented in this case as practical considerations weighing in favor of transfer.  Brooks also states that it is a "mid-sized, family-owned company" for which the costs associated with litigating in Louisiana, more than 2,500 miles from its Bellingham, Washington headquarters, would be a "substantial financial...burden[.]"[51]

Dis-Tran argues against the idea that the court for the Western District of Washington possesses any greater expertise as to the issues presented in this case because the prior suit was dismissed at an early stage for lack of jurisdiction and the court did not delve into the substantive patent issues.  Dis-Tran also asserts that, like Brooks, it would incur a substantial financial burden if it was forced to litigate in Washington.[52]

---

[48] R. 18 at p. 16.
[49] R. 29-2 at p. 20.
[50] In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004) (citing Piper Aircraft v. Reyno, 454 U.S. 235, 241 n. 6 (1981).
[51] R. 18 at p. 17.
[52] R. 29-2 at pp. 20-21.

We agree that, because the prior suit was dismissed at an early stage, the argument that the Washington court possesses such familiarity with the parties and issues that it presents a clearly better venue for this trial is of no merit.  The financial burdens to the parties are, according to the information available to the court at this time, similar.  Taken together, these "practical concerns" are neutral.  We now address the public interest factors regarding transfer of venue.

The first public interest factor is the administrative difficulty flowing from court congestion.  Brooks asserts that transfer of this case to the Western District of Washington will serve the purpose of judicial economy because, although the number of pending cases in this district and the proposed venue are nearly equal, the average length of pendency of civil cases in the Washington court is 16.3 months, as compared with 27.8 months in our court.[53]

Dis-Tran provides other statistics, showing that the Washington court takes half as much time as this court does to dispose of the average civil case, but notes that this court has seen a 15.9% reduction in the number of new cases filed, while the Washington court boasts a 7.6% increase in new civil filings.[54]   Although not explicitly stated, it appears that Dis-Tran's argument is that these statistics show that this court has more time to consider the merits of this case than would the increasingly busy Western District of Washington.

While we acknowledge that these sorts of statistical comparisons often accompany analysis of this first public interest factor,[55] we decline to extrapolate too much from these statistics in terms of any court's actual capacity for service to litigants.  We do find, however, that a plain reading of these figures leads to the conclusion that this suit will be more quickly

_____

[53] R. 18 at p.p. 18-19.
[54] R. 29-2 at p. 22.
[55] 15 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3854 at 289-92 (1976).

Brooks asserts that, should this case remain in the Western District of Louisiana, it will be prejudiced by its inability to compel the attendance of these witnesses.[45]

Dis-Tran cites two (2) cases from the Eastern District of Texas for the proposition that the party seeking transfer of venue must specify the key witnesses which fall outside of the court's subpoena power and must offer some general information as to the anticipated content of the key witnesses' testimony.[46] The court agrees that some specificity is required and finds that Brooks' vague reference to unspecified persons and the absence of any information as to what relevant testimony such unspecified person might provide fails to tip the scale in its favor as to this factor. On the other hand, Dis-Tran's opposition offers an equally vague response, stating that

> [m]any of Dis-Tran's likely key witnesses reside in this forum. These include Dis-Tran's officers, managers, sales tem, records custodians, and engineers. In addition, Dis-Tran's and the defendant's customers are dispersed throughout the United States. For example, those customers subpoenaed by the defendant are in Texas, New Mexico and Pennsylvania.[47]

Dis-Tran asserts that this is a declaratory judgment action and that the testimony of witnesses will be of limited value to the court because the dispute involves issues of law, rather than fact. The court disagrees, noting that Dis-Tran's suit seeks declaratory judgment not only as to the validity of Brooks' patent, but also as to the issue of infringement. The court can easily foresee the importance of key witness testimony as to infringement if it were to find that Brooks' patent was valid.

Based upon these equally vague responses and our observations regarding the nature of the suit, the court finds the second private interest factor to be neutral.

---

[45] Id.
[46] R. 29-2 at p. 19 at n. 127.
[47] R. 29-2 at p. 19.

11

litigated in the Western District of Washington and, therefore, this factor weighs in favor of transfer.

The second public interest factor is the local interest in having localized interests decided at home. Brooks asserts that, because this suit is centered on the validity of a patent held by a Washington business entity, contested by another business entity also maintaining offices in Washington, the State of Washington has an overwhelming interest in the outcome of the litigation.[56] Dis-Tran reaches the opposite conclusion, characterizing the suit as an action by a Louisiana company for redress of harms which impact its business locally.[57]

As to this factor, we agree with Brooks that the origin of this suit is a patent held by a Washington entity and contested by a business with a location in Washington. Although Dis-Tran does business within the State of Louisiana and maintains what may be its main offices in this state, these facts do not outweigh the interests of the State of Washington in its patentee's intellectual property rights. We find that this second public interest factor weighs in favor of transfer.

The third public interest factor is the familiarity of the forum with the law that will govern the case. Brooks asserts that both this court and the proposed venue can effectively apply the relevant law in this case and, therefore, this factor is neutral.[58] Dis-Tran agrees and argues that, because the Washington court is no better position to apply relevant law, this factor does not favor transfer.[59] The court agrees that this factor is neutral.

The fourth and final public interest factor is the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. Brooks states that it anticipates no issues

---

[56] R. 18 at p. 19.
[57] R. 29-2 at p. 22.
[58] R. 18 at p. 20.
[59] R. 29-2 at p. 23.

with conflict of law or with the application of foreign law.  Dis-Tran agrees that no such issues are anticipated in this case.  The court finds that this factor is also neutral.

In summary, Brooks has shown that the transferee venue is a venue in which this suit might have properly been filed and that, although most of the relevant factors are neutral, the first and second public interest factors concerning court congestion and localized interests weigh in favor of transfer.  Accordingly, were this court to find that it possessed either general or specific jurisdiction over Brooks in this case, it would grant Brooks' motion for transfer of venue to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1404(a).

Brooks' motion asserts that, if the court found that it had general or specific jurisdiction over it in this matter, but found transfer inappropriate under the foregoing analysis, it should decline to exercise declaratory judgment jurisdiction based on alleged forum shopping by plaintiff, Dis-Tran.[60]  Brooks' argument here necessitates some rehashing of Brooks' 2011 suit in the Western District of Washington ("2011 Suit").

Brooks filed suit against Dis-Tran in the Western District of Washington seeking declaratory judgment declaring that its '438 Patent was valid and that Dis-Tran's sale of Dura-Arm crossarms infringed upon the patent.[61]  Dis-Tran obtained dismissal of the 2011 Suit based upon its argument before the Washington court that no case or controversy existed since it neither contested the validity of the patent at issue, nor infringed upon the patent.  In its ruling dismissing the 2011 Suit for lack of jurisdiction, the Washington court noted that, due to customers returning most of the Dura-Arm crossarms sold to them by Dis-Tran, insufficient evidence existed at that time to support an infringement claim, so Brooks amended its complaint

---

[60] R. 18 at pp. 20-22.
[61] R. 28-2 at p. 3.

to assert only a declaratory action regarding validity of its patent.[62]   The court reasoned that, since Brooks' patent is presumed valid until proven invalid and Dis-Tran did not contest the patent validity in that case, it found no case or controversy before it and, therefore, no matter within its jurisdiction.[63]

Brooks argues that Dis-Tran has, since approximately 2007, contested the validity of its '438 Patent and was disingenuous with the Washington court in arguing otherwise.   Brooks asserts that Dis-Tran's maneuvering amounts to forum shopping, which is a disfavored practice. Dis-Tran denies that it engaged in forum shopping, asserting instead that it simply chose to litigate what it feels are harms to its business in the district court in the location of its principal place of business after Brooks attempted to bring an action against it unsuccessfully in the Washington court.[64]

The court finds that Dis-Tran unquestionably engaged in forum shopping in this case. We agree with Brooks' contention that this suit is, in actuality, the continuation of its 2011 Suit based upon the same facts and seeking to adjudicate the same issues raised by Brooks in 2011 Suit.   While deference is to be given to a plaintiff's choice of forum, such deference is inappropriate when, as here, plaintiff's choice of forum is the result of rather egregious forum shopping.   Had Dis-Tran confessed the issues which undoubtedly existed among these parties in the 2011 Suit, they could have been adjudicated by the district court and, likely, concluded by now (according to the statistics presented by the parties).   Dis-Tran's dilatory actions have undoubtedly added significant time and cost to the ultimate resolution of this dispute.   Thus, had we found that we possessed either general or specific jurisdiction over Brooks, and found

---

[62] Id. at pp. 3-5.
[63] Id. at pp. 10-12.  The court notes that our broad summary of the court's ruling does not do its thoughtful analysis justice and is only meant for this limited purpose.
[64] R. 29-2 at p. 23.

transfer inappropriate under the foregoing analysis, this court would have declined to exercise its declaratory jurisdiction over the instant matter based on evidence what we deem blatant forum shopping.

## III.     Conclusion

The court finds that it lacks general and specific personal jurisdiction over defendant Brooks in this case and, therefore, will dismiss plaintiff's claims against it without prejudice pursuant to Fed. R. Civ. P. 12(b)(3).  Although the court is not required to make further findings, it notes that, had we found that we possessed some personal jurisdiction over Brooks in this case, we would have transferred venue to the Western District of Washington pursuant to 28 U.S.C. § 1404(a) based upon our conclusion that two (2) of eight applicable factors weigh in favor of transfer and the remaining six (6) are neutral.  Finally, were we to find that we had some personal jurisdiction over Brooks, but found that transfer of venue under 28 U.S.C. § 1404 was somehow improper, we would decline to exercise jurisdiction in this matter based on rather convincing evidence of forum shopping by Dis-Tran involving representations to the district court in Washington in Brooks' 2011 Suit.

The court will issue judgment in conformity with these findings.


Alexandria, Louisiana
November 29, 2012                                    _____
                                                     JAMES T. TRIMBLE, JR.
                                                     UNITED STATES DISTRICT JUDGE